**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| VERONICA MORGAN | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-09-1584 |
| | * | |
| PRINCE GEORGE'S COUNTY, | * | |
| MARYLAND, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Plaintiff Veronica Morgan ("Morgan") brings this action against Defendants Prince George's County, Maryland ("County"), Officer Lightfoot ("Lightfoot"), Officer Richardson ("Richardson"), Corporal Smith ("Smith"), and John and Jane Does 1-5. Pending before the Court is Lightfoot's Motion to Revise Scheduling Order (Doc. No. 25); Plaintiff's Motion for Default Judgment on the part of Smith, Lightfoot, and Richardson (Doc. No. 32); Smith, Lightfoot, and Richardson's Motion for Summary Judgment (Doc. No. 38); and Smith and Richardson's Motion to Dismiss with prejudice (Doc. No. 22). The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008).

For the reasons set forth below, the Court (1) GRANTS Defendant Lightfoot's Motion to Revise Scheduling Order; (2) DENIES Plaintiff's Motion for Default Judgment; (3) GRANTS IN PART and DENIES IN PART Defendants Smith, Lightfoot, and Richardson's Motion for Summary Judgment as a whole with the following result: (a) Counts I, IV & V are DENIED as to Smith and GRANTED as to Lightfoot and Richardson, (b) Counts II & III are DENIED as to

1

Smith and Lightfoot and GRANTED as to Richardson, and (c) Counts VI-IX & XII are GRANTED as to Smith, Lightfoot, and Richardson; and (4) DENIES Defendants Smith and Richardson's Motion to Dismiss.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken from the Complaint and construed in the light most favorable to Morgan.  On May 6, 2006, Morgan was in her home when police officers arrived to answer a call related to an argument between Morgan and her husband.  Morgan allowed the officers to enter and question her.  Smith ordered her to sit on the sofa, and the officers questioned Morgan about the argument while standing over her menacingly and cursing at her. When she felt the onset of an asthma attack, Morgan attempted to stand up for air, but Smith grabbed Morgan at the neck and forcibly pushed her back on the sofa.  During Morgan's third attempt to stand, Smith punched her in the nose, causing Morgan's nose to bleed.[1]  The officers then arrested Morgan.

On May 5, 2009, Morgan filed a Complaint in the Circuit Court for Prince George's County, Maryland, alleging excessive force under § 1983 (Count I), false arrest under § 1983 and Maryland law (Counts II & III), assault and battery under Maryland law (Counts IV & V), conspiracy under § 1983 and Maryland law (Counts VI & VII), unlawful seizure of property under § 1983 (Count VIII), violation of equal protection (class of one) under § 1983 (Count IX), and intentional infliction of emotional distress (Count XII).  Defendants removed the case to this Court on June 16, 2009.  Lightfoot filed an Answer on December 9, 2009, and Plaintiff

---

[1] Plaintiff states in her Complaint that Smith struck her on the nose, but also alleges under her Count V claim for battery that "Defendant [o]fficers struck [her] intentionally."  (Compl. ¶¶ 24, 54.)  And then, in Plaintiff's Memorandum in Opposition of Defendants' Motion for Summary Judgment, she names Lightfoot as the officer who punched her in the face.  (Doc. No. 39.)  To the extent that this allegation conflicts with her Complaint and the Affidavit of Shawn DeBrew, where he identifies Plaintiff's alleged attacker as a female officer (Smith is a female and Lightfoot is a male), the Court will assume that the assertions in the Complaint are the true allegations, and that Plaintiff mistakenly named Lightfoot as the attacker in her Memorandum in Opposition.  (Doc. No. 39, Ex. 2.)

submitted an Affidavit to the Court on January 8, 2010, and provided answers to Lightfoot's Interrogatories.

Plaintiff not only sued Defendants Smith, Lightfoot, and Richardson, but also Officer Melvin High, Chief of the Prince George's County Police Department, John and Jane Does 1-5 (unnamed police officers allegedly involved in the incident), and Prince George's County (Counts X & XI).  On September 25, 2009, the Court granted High's Motion to Dismiss and Prince George's County's Motion to Dismiss the claim of negligent supervision and training (Count XI).  (Doc. No. 15.)  Still remaining against Prince George's County is Plaintiff's *Monell* claim (Count X); the Court granted the County's Motion for Bifurcation and Stay of Discovery on January 5, 2010.  (Doc. No. 20.)  At this point it is unclear how much, if any, discovery Plaintiff, Smith, Richardson, and Prince George's County have conducted.

## II.     DEFENDANT LIGHTFOOT'S MOTION TO REVISE SCHEDULING ORDER

Lightfoot filed a Motion to Revise Scheduling Order on December 22, 2009.  Under Rule 16(b), which governs the issuance of a scheduling order, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 08-918, 2010 WL 1418312, at *3 (M.D.N.C. Apr. 2, 2010) (internal quotation omitted).  Showing a lack of prejudice to the opposing party does not establish good cause.  *See Cole v. Principi*, No. 02-790, 2004 WL 878259, at *7 (M.D.N.C. Apr. 22, 2004).

Lightfoot requests that the Court extend the deadline for his expert disclosures by three weeks, which he claims would provide him with sufficient time to obtain and evaluate Plaintiff's medical records and identify the appropriate expert to review the records and provide a report.  (Doc. No. 25.)  Plaintiff argues in opposition that "[a]ny change to the Scheduling Order that

gives [] Lightfoot the ability to gather information as a party where [] Lightfoot was not available to provide information for Plaintiff" would greatly prejudice her. (Doc. No. 33.) The Court believes that Lightfoot had good cause to revise the Scheduling Order because he needed to procure Plaintiff's medical records and was apparently diligent in trying to procure them. Thus, the Court grants Lightfoot's motion and directs him to submit a revised proposed Scheduling Order within ten days of the entry of the Court's Order.

## III. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff filed a Motion for Default Judgment on January 8, 2010, claiming that Defendants failed to respond to the Complaint in a timely manner. Default judgment is available when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. *See* Fed. R. Civ. P. 55(a). The court can properly view the defendant's opposition to a plaintiff's motion for default judgment as a motion to set aside an entry of default. *Armor v. Michelin Tire Corp*, No. 96-1724, 1997 WL 245217, at *2 (4th Cir. May 13, 1997) (internal citation omitted). Where the court has not yet entered a default judgment, it must decide the plaintiff's motion under the "good cause" standard of Rule 55(c). *Id.* Under Rule 55(c), the main considerations for the court are whether setting aside an entry of default would prejudice the opposing party and whether that party presented a meritorious defense. *Id.* (internal citation omitted).

Plaintiff alleges that she served Smith and Richardson on May 21, 2009, and Lightfoot on July 8, 2009, but that Defendants did not appear or otherwise defend this matter until they filed responsive pleadings on December 9, 2009.[2] (Doc. No. 32.) Plaintiff claims that as a result of

---

[2] Plaintiff contends that the Maryland Rule of Civil Procedure 2-321 requires Smith and Richardson, whom Plaintiff served before Defendants removed the case to this Court on June 16, 2009, to file their responsive pleadings within 30 days after being served. Plaintiff asserts that Lightfoot, who received service after the case was removed to this Court, had 20 days to respond pursuant to Fed. R. Civ. P. 12.

Defendants' delay, her discovery was limited and that "[a] set aside of Defendants' default would greatly prejudice Plaintiff because a significant portion of time in the Scheduling Order has passed." (Doc. No. 32.) Defendants counter that Plaintiff did not file any Affidavit of Service with this Court until December 8, 2009, and that had she done so, they would have timely responded. (Doc. No. 35.) Indeed, Smith and Richardson assert that they timely filed a Motion to Dismiss when they first learned on December 8, 2009, of Plaintiff's contention that she had properly served them on May 21, 2009. (Doc. No. 35.) Lightfoot argues that the delay in his filing of his Answer has not resulted in any prejudice toward Plaintiff because of her "inaction for the same six months with regards to prosecuting this case." (Doc. No. 35.)

Smith and Richardson filed their Motion to Dismiss and Lightfoot filed his Answer almost a month before Plaintiff moved for default judgment against them. In addition, their delay in response did not noticeably prejudice Plaintiff, as Plaintiff did not actively pursue her claims against Defendants from July to December 2009. Accordingly, the Court denies Plaintiff's Motion for Default Judgment.

## IV. DEFENDANTS SMITH, LIGHTFOOT, AND RICHARDSON'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). Ultimately, summary judgment is appropriate "where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

### B. Analysis

1. <u>Officer Richardson</u>

Before addressing the motion for summary judgment, the Court will address as a preliminary matter the issue of whether Plaintiff has pled sufficient facts to make out any claims against Richardson. A plaintiff must allege at least "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The Court need not accept conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In the Complaint, Plaintiff contends that Richardson falsely arrested her (Counts II and III). She also alleges that he knew of her "illegal assault, battery and arrest" and that he denied Plaintiff's allegations in order to protect the other officers, which the Court presumes is the basis

for her conspiracy claims (Counts VI and VII).  (Compl. ¶ 26, 31.)  However, she fails to present any factual allegations that could lead to an inference that he may be legally liable for even one of her claims.  In fact, as Defendants correctly note, Plaintiff does not allege that Richardson interacted with Plaintiff or had any knowledge of the other Defendants' alleged violations.  (Doc. No. 38.)  Plaintiff states in her response to Defendants' motion that Richardson was one of the officers that Shawn DeBrew,[3] Plaintiff's foster son, mentioned in his Affidavit, and that an opportunity for discovery would allow Plaintiff to uncover information about Richardson's involvement in the altercation.  (Doc. No. 39.)  But DeBrew does not actually name Richardson, or any of the other Defendants, in his Affidavit.  (Doc. No. 39, Ex. 2.)  Since Plaintiff fails to set forth facts to support any of her claims against Richardson, the Court grants summary judgment to Richardson on all of Plaintiff's claims (Counts I to IX and XII) and dismisses him from the suit.

### 2.  Section 1983 Claims—Qualified Immunity

In their motion for summary judgment, Defendants contend that they are immune from suit as public officials.  Police officers subject to suit under 42 U.S.C. § 1983 may raise the defense of qualified immunity, which protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In assessing the officers' claim of qualified immunity, the court must determine whether the plaintiff has alleged facts setting forth valid claims of a deprivation of the plaintiff's constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court must also decide if that right was clearly established at the time of the incident giving rise to the suit, measured by

---

[3] Based on Plaintiff's pleadings and DeBrew's signature in his Affidavit, the Court believes that his first name is spelled "Shawn," not "Sean."  Accordingly, the Court will not use the spelling from Defendants' pleadings and from the Affidavit of "Sean" DeBrew.  (Doc. No. 39, Ex. 2.)

whether a reasonable officer would have believed the conduct to be lawful under the same or similar circumstances.[4] *Wilson v. Lane*, 526 U.S. 603, 615 (1999); *Williams v. Hansen*, 326 F.3d 569, 574 (4th Cir. 2003).  Although qualified immunity "operates" to ensure that police officers are on notice that their conduct is unlawful, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), it does not require courts to have previously declared the "very action in question" unlawful.[5]  *Id.*  Rather, "in light of pre-existing law the unlawfulness must be apparent" to the officers.  *Id.*

     a.   *Count I: § 1983 Excessive Force*

In deciding whether law enforcement officers are entitled to qualified immunity for a claim of excessive force under § 1983, the Court first determines whether the facts show that Defendants' conduct violated the Fourth Amendment right of an individual to be free from "unreasonable searches and seizures."  U.S. Const. amend. IV; *Pethtel v. W. Va. State Police*, 568 F. Supp. 2d 658, 667 (N.D. W. Va 2008) (citing *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)).  A seizure in violation of the Fourth Amendment occurs when the police officer, "'by means of physical force or show of authority,'" terminates or restrains an individual's freedom of movement, *Fla. v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968)), "*through means intentionally applied*" that are unreasonable, *Brower v. County of Inyo*, 489 U.S. 593, 597-99 (1989) (emphasis in original).

The Fourth Amendment prohibits police officers from using excessive force to seize a free citizen.  *Graham v. Connor*, 490 U.S. 386, 394-395 (1989).  Courts must evaluate the objective reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene" with an eye toward the proportionality of the force in light of all the facts and

---

[4] The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009).

[5] Police officers can "be on notice that their conduct violates established law even in novel factual situations." *Hope*, 536 U.S. at 741.

circumstances, but without regard to the officer's underlying intent or motivation. *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994); *Graham*, 490 U.S. at 397. *Graham* provides three factors to guide the objective reasonableness inquiry: (1) "the severity of the crime"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal citation omitted). Granting "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992).

In this case, when Smith and Lightfoot required Plaintiff to remain seated on her sofa, thus restraining her freedom of movement, they effected a Fourth Amendment seizure of Plaintiff. (Compl. ¶¶ 16-23.) Smith and Lightfoot appear to have intentionally confined Plaintiff to her sofa so the other officers could conduct a sweep of her house to look for her husband. (Doc. No. 38.) The Court believes that based on the facts known to Smith and Lightfoot at the time of the seizure regarding a supposedly violent dispute between Plaintiff and her husband, Defendants could draw a reasonable conclusion that they were justified in seizing Plaintiff.

In determining whether the force that Defendants allegedly used in the course of seizing Plaintiff is objectively reasonable, the Court considers the severity of Plaintiff's criminal conduct, whether she posed an immediate threat to Defendants, and whether she was actively resisting arrest. *Graham*, 490 U.S. at 396. Since Plaintiff's grandson reported in his 911 call that Plaintiff had cut her husband with a knife during an argument,[6] Defendants could reasonably consider her alleged act of violence a severe crime. (Doc. No. 38, Ex. 1.) But assuming that Plaintiff was disobeying Defendants' orders to remain seated solely because she was having an

---

[6] The Court notes that Plaintiff denies cutting her husband and claims that the laceration that police officers found on his forearm was "a scrape . . . from working earlier in the day." (Doc. No. 39, Ex. 3.)

asthma attack and needed to stand up to breathe, it was not reasonable for Smith to strike her on the nose.[7] (Compl. ¶ 24.) In addition, Plaintiff denies that she ever threatened Defendants or tried to escape. (Doc. No. 39.) In light of Plaintiff's allegations, the second and third *Graham* factors weigh in favor of denying summary judgment to Smith.

Since Plaintiff has proffered evidence of a violation of her Fourth Amendment rights, the Court now considers whether Smith is nonetheless entitled to qualified immunity because Plaintiff's constitutional right was not clearly established at the time of the altercation. *Wilson*, 526 U.S. at 615. Before and after the Supreme Court's decision in *Graham*, "courts have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." *Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003). Based on this standard, Smith would not be protected under qualified immunity because an objectively reasonable officer would know that striking a person on the nose who allegedly did not pose any physical threat to police officers would be an unreasonable use of force. Even though Plaintiff was attempting to stand, in violation of Defendants' orders, a reasonable officer would not have believed it was legal to strike her in the face, especially when there were other ways to restrain Plaintiff that would not have involved physically hurting her.[8] As prior case law has established, such unreasonable use of force may constitute a Fourth Amendment violation. *See, e.g.*, *Harrison v. Prince William County Police Dep't, et al.*, 640 F.2d 688, 703 (E.D. Va. 2009).

With regard to Plaintiff's claim against Lightfoot, she does not allege in her Complaint

---

[7] Although Defendants do not admit that Smith struck Plaintiff, they do not deny Plaintiff's claim either, and they acknowledge that police officers took Plaintiff to Fort Washington Hospital to treat her for a nose bleed after her arrest. (Doc. No. 38.)

[8] While the Court is not inquiring whether Defendant chose the most reasonable course of action in handling the situation, "the availability of other reasonable, or even more reasonable, options is not completely irrelevant to [the] inquiry" regarding whether Defendant's conduct was "objectively reasonable under the totality of the circumstances." *Young v. Prince George's County*, 355 F.3d 751, 758, n.2 (4th Cir. 2004).

that Lightfoot struck her or applied any physical force other than placing her under arrest. Without any evidentiary basis to support her excessive force claim against Lightfoot, Plaintiff cannot prevail. *See Pethel*, 568 F. Supp. 2d at 669 (determining that in the absence of any physical contact, the defendant officers did not use excessive force and were thus entitled to summary judgment on the plaintiff's § 1983 claim). Therefore, since Plaintiff has failed to set forth non-conclusory claims regarding Lightfoot's involvement in the physical altercation with Plaintiff that could lead to a finding that he violated Plaintiff's constitutional rights, the Court grants Lightfoot summary judgment on this Count.

Based on the reasons above, the Court denies summary judgment to Smith but grants summary judgment to Lightfoot on Plaintiff's § 1983 claim for excessive force (Count I).

        b. *Count II: § 1983 False Arrest*

In a § 1983 action, the court determines the lawfulness of an arrest under the law of the state in which the police made the arrest. *Harrison*, 640 F.2d. at 701 (quoting *Robinson v. Goff*, 517 F. Supp. 350, 353-54 (D. Va. 1981)). The elements of false arrest under Maryland law are: "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 361 Md. 258, 264 (Md. 2000) (internal citations omitted). Legal justification is the "equivalent to legal authority" to arrest. *Green v. Brooks*, 725 A.2d 596, 605 (Md. Ct. Spec. App. 1999). The test of legal justification in the context of false arrest is "'judged by the principles applicable to the law of arrest,'" *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995) (quoting *Ashton v. Brown*, 660 A.2d 447, 472 (Md. 1995)), such as the need for officers to have probable cause to conduct a warrantless arrest, *Md. v. Wallace*, 812 A.2d 291, 297 (Md. 2002).

A court's determination of whether probable cause exists requires a nontechnical,

common sense evaluation of the totality of the circumstances in a given situation in light of the facts the trial judge found to be credible. *Md. v. Lemmon*, 568 A.2d 48, 55 (Md. 1990); *Doering v. Md.*, 545 A.2d 1281, 1290 (Md. 1988). Probable cause exists where the facts and circumstances taken as a whole would lead a reasonably cautious person to believe that a felony had been or is being committed by the person arrested. *Woods v. Md.*, 556 A.2d 236, 246 (Md. 1989); *Stevenson v. Md.*, 413 A.2d 1340, 1349 (Md. 1980). Therefore, to justify a warrantless arrest, the police must point to specific facts which, taken together with rational inferences from those facts, establishes that the officer had probable cause to believe that an individual committed a felony. *See* Md. Ann. Code art. 27, § 594B(c) (1996 Repl. Vol. & 1998 Supp.); *Cooper v. Md.*, 737 A.2d 613, 618-19 (Md. Ct. Spec. App. 1999).

In this case, there is a dispute of fact regarding the reason for Plaintiff's arrest. Plaintiff alleges that Defendants arrested her for no reason; Defendants contend that they had probable cause to arrest her because she had supposedly cut her husband with a knife. (Doc. Nos. 38 & 39.) Defendants assert that they learned of this incident before they arrived at Plaintiff's home from the 911 call that Plaintiff's grandson had placed, where he stated that Plaintiff cut her husband with a knife in self-defense during a fight. (Doc. No. 39, Ex. 1.) However, Defendants only arrested Plaintiff after she allegedly attacked Smith, and the police report indicates that Defendants charged Plaintiff with second degree assault of Smith, not with assault of her husband.[9] (Doc. No. 39, Ex. 3.)

Defendants may have had probable cause to arrest Plaintiff for assault based on the 911 call and their discovery of a laceration on Plaintiff's husband's arm. (Doc. No. 38); *see Hines v. French*, 852 A.2d 1047, 1056 (Md. Ct. Spec. App. 2004) (noting that the defendant had legal

---

[9] The Statement of Charges that Lightfoot prepared charged Plaintiff with "assault in the second degree" and resisting arrest, but did not specifically charge Plaintiff with assault on her husband. (Doc. No. 39, Ex. 3.) Plaintiff stated in her response to Lightfoot's Interrogatories that these charges were dismissed. (Doc. No. 39, Ex. 5.)

justification to arrest the plaintiff because "the information issued by the 911 dispatch [contained information that the defendant] had no reason to disbelieve . . .").  But, Defendants merely detained Plaintiff as they questioned her about her dispute with her husband, and did not appear to indicate that she was under formal arrest until after the alleged physical altercation between Plaintiff and Smith.  Drawing all inferences in favor of Plaintiff, this Court believes that Defendants only arrested Plaintiff after her altercation with Smith.  Therefore, there is a genuine issue of material fact as to whether Defendants had legal justification to arrest Plaintiff, as Plaintiff denies touching Defendants or threatening them in any way.  In sum, there is still a factual dispute regarding the facts and circumstances underlying Plaintiff's arrest that precludes an entry of summary judgment for Defendants on the § 1983 false arrest claim (Count II).

      c.  *Count VI: § 1983 Conspiracy*

To state a claim for conspiracy to deprive an individual of a constitutional right in violation of § 1983, the plaintiff must allege that defendants (1) "acted jointly in concert" and (2) performed an overt act (3) "in furtherance of the conspiracy" that (4) resulted in the deprivation of a constitutional right.  *Hinkle*, 81 F.3d at 421 (internal citation omitted).  While the plaintiff does not need "to produce direct evidence of a meeting of the minds" to prove his claim, he or she will have to "come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective."  *Hinkle*, 81 F.3d at 421 (noting that the plaintiffs have "a weighty burden to establish a civil rights conspiracy").

For a plaintiff to survive a motion for summary judgment, he or she must present evidence that leads "to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Id.*  As the Fourth Circuit has held, the plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of

each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-45 (4th Cir. 2006). Otherwise, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Davis v. County of Amherst*, No. 07-017, 2008 WL 591253, at *3 (W.D. Va. Mar. 3, 2008) (internal citation omitted).

Since Plaintiff has not yet had the opportunity for discovery, the Court does not expect Plaintiff to present evidence of a conspiracy at this stage. But, Plaintiff has failed to even present facts that could support her conspiracy claim. Plaintiff alleges that Defendants conspired to violate her rights under the Fourth and Fourteenth Amendment through their agreement to use excessive force and then cover up their actions by falsely arresting and charging Plaintiff and generating false documentation. Compl. ¶¶ 35-36. Plaintiff also claims that Defendants "conspired with each other to perpetrate a false account of the events leading up to the injury and arrest of Veronica Morgan." Compl. ¶ 33. These charges do not, however, suffice to give rise to an inference that each Defendant shared the same conspiratorial objective; instead, Plaintiff's discussion of her conspiracy claim in the Complaint amounts to "rank speculation and conjecture." *Hinkle*, 81 F.3d at 422. Therefore, summary judgment for Defendants is appropriate as to the § 1983 conspiracy claim (Count VI).

d. *Count VIII: § 1983 Unlawful Seizure of Property*

Plaintiffs generally sue for unlawful seizure of property under § 1983 when police officers have allegedly seized property from them during a search. *See, e.g.*, *Killian v. City of Riverview*, 98 F.3d 1342, Tbl. 2 (6th Cir. 1996) (holding that the police officer's seizure of the plaintiff's keys was reasonable). Here, Plaintiff merely alleges that Defendants "seized and/or destroyed the property of Plaintiff without legal justification," which she argues violated the

Fourth and Fourteenth Amendments. (Compl. ¶¶ 62-63.) Plaintiff offers no details as to what Defendants supposedly seized or destroyed, and nothing in the Complaint suggests that Defendants seized something belonging to Plaintiff. Plaintiff also states that she "makes this claim in conjunction with her false arrest argument." (Doc. No. 39.) If Plaintiff is claiming that Defendants' seizure of her person was an unlawful seizure of property, her claim would be duplicative of her false arrest claim. Because Plaintiff fails to properly allege what she believes Defendants took from her, the Court grants summary judgment to Defendants on her § 1983 unlawful seizure of property claim (Count VIII).

> e. *Count IX: § 1983 Equal Protection—Class of One*

While the Supreme Court's equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others," *McGowan v. Md.*, 366 U.S. 420, 425 (1961), the plaintiff may be able to maintain an equal protection claim against a state actor by alleging that the defendant has irrationally singled him or her out as a "class of one,"[10] *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2152 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)). But where the state actor exercises discretionary authority based on subjective, individualized determinations, "treating like individuals differently is an accepted consequence of the discretion granted." *Engquist*, 128 S. Ct. at 2154.

Plaintiff claims that the physical treatment she endured from Defendants "is not what is expected or deserved by any law-abiding citizen." (Doc. No. 39 at 7.) Defendants, citing *Willis v. Town of Marshall*, 426 F.3d 251 (4th Cir. 2005), argue that in order for Plaintiff to prevail, she must present evidence that shows she was intentionally treated differently, and must show a high

---

[10] The Fourteenth Amendment "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes v. Mo.*, 120 U.S. 68, 71-72 (1887).

degree of similarity between herself and the person to whom she compares herself. (Doc. No. 38.) Even if the Court assumes that Defendants struck Plaintiff in the face without provocation, Plaintiff did not allege that Defendants have treated similarly situated people differently. *See, e.g.*, *Glover v. Mabrey*, No. 08-7048, 2010 WL 2563032, at *14 (10th Cir. June 28, 2010) (holding that the plaintiff contractor failed to state a claim because "[u]nlike the plaintiff in *Olech*, who alleged specific property owners received more favorable treatment, [the plaintiff] [did] not identify any contractor who was treated differently").

In essence, Plaintiff has not set forth any facts indicating that this was not the sort of discretionary conduct the *Engquist* court found acceptable. Therefore, Plaintiff's conclusory allegation that Defendants treated her differently from what a law-abiding citizen deserves is bereft of any facts or specifics to set forth a cognizable claim. Accordingly, the Court grants summary judgment to Defendants on Plaintiff's § 1983 equal protection claim (Count IX).

### 3. State Claims—Qualified Immunity

Under Maryland common law, qualified immunity protects public officials such as police officers from liability for negligent conduct committed while performing discretionary acts. *Clea v. Mayor and City Council of Balt.*, 541 A.2d 1303, 1307 (Md. 1988). However, the plaintiff can overcome common law public official immunity through a showing of malice. *Lovelace v. Anderson*, 785 A.2d 726, 734 (Md. 2001) (internal citation omitted). The Maryland Court of Appeals recently affirmed that a showing of malice requires a determination of whether the arresting officer was motivated by ill will or improper motive. *Shoemaker v. Smith*, 725 A.2d 549, 560 (Md. 1999). The plaintiff can show evidence of malice with proof that the officer performed "'an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Id.* at

163 (quoting *Leese v. Baltimore County*, 497 A.2d 159, 179 (Md. Ct. Spec. App. 1985)).  The court may infer malice from the surrounding circumstances, even if the officer's actions were objectively reasonable.  *Lee*, 863 A.2d at 311.  The Maryland courts have noted that the question of malice should typically be left to the fact-finder, and not disposed of through summary judgment.  *Thacker*, 762 A.2d at 189.  But normal pleading rules apply, and to survive a motion for summary judgment, "the plaintiff must point to specific evidence that raises an inference that the defendant's actions were improperly motivated" by actual malice.  *Id.* at 189-90.

a.  *Count III: False Arrest*

The Court's earlier application of Maryland law for the § 1983 false arrest claim also applies to Plaintiff's state law claim.  The Court believes that, when viewing the facts in the light most favorable to Plaintiff, there is a material dispute of fact as to whether Defendants lacked legal justification to arrest Plaintiff.  The Court also notes that to the extent Defendants plead qualified immunity under the Maryland standard, Plaintiff has sufficiently alleged facts from which the court could infer that Defendants had actual malice toward Plaintiff.

Before the physical altercation with Plaintiff occurred, Defendants said, "We own this motherfucker" and continuously cursed at Plaintiff.  (Compl. ¶ 18.)  A fact-finder could infer that these words indicated Defendants' ill will toward Plaintiff even before any physical confrontation began.  *See, e.g.*, *Sykes v. Wicomico County, et al.*, No. 05-2846, 2007 WL 1073607, at *9 (D. Md. Mar. 30, 2007) (finding evidence raised an inference of malice where the defendant gave the plaintiff "three seconds" to get into the building but then said "too damn late" and attacked the plaintiff from behind).  Defendants, of course, contest Plaintiff's version of the events, but there is sufficient dispute of material fact for the jury to decide the question of malice.  Accordingly, this Court denies Defendants' motion for summary judgment for the state

false arrest claim (Count III).

b. *Counts IV & V: Assault and Battery*

Under Maryland law, assault is "an attempted battery or an intentional placing of a victim in reasonable apprehension of an imminent battery," while "'[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent.'" *United States v. Baldwin*, No. 08-5226, 2009 WL 3326408, at *3 (4th Cir. Oct. 16, 2009); *Young*, 355 F.3d at 759 (internal citations omitted). Police officers do not possess qualified immunity for intentional torts such as assault and battery under Maryland law. *Davis v. Muse*, 441 A.2d 1089, 1091 (Md. Ct. Spec. App. 1982). But, a "law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties unless he acted with actual malice toward the plaintiff, i.e. with ill will, improper motivation or evil purpose." *Goehring v. United States*, 870 F. Supp. 106, 108 (D. Md. 1994).

Plaintiff states that Smith, "without just cause or provocation, maliciously, willfully and intentionally assaulted Plaintiff through the use of excessive force[,] causing[] painful and permanent injuries." (Compl. ¶ 52.) Plaintiff also alleges that Defendants committed battery by striking Plaintiff "intentionally, without consent and without justification," in violation of Maryland law. (Compl. ¶¶ 54-55.) While Smith's use of force subsequent to Plaintiff being cornered on the sofa was intentional, the fact-finder must decide whether Smith maliciously struck Plaintiff. As such, the Court will deny Smith's motion for summary judgment on Plaintiff's state law assault and battery claims. Because Plaintiff did not allege in her Complaint that Lightfoot struck her, however, the Court grants summary judgment for Lightfoot on the assault and battery claims (Counts IV & V).

c. *Count VII: Conspiracy*

A civil conspiracy under Maryland law is "'a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'" *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 485 (Md. 2006) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). In a claim for civil conspiracy, a plaintiff must establish that two or more defendants, acting in concert, engaged in conduct constituting a tort. *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 639 A.2d 173, 176-77 (Md. Ct. Spec. App. 1994). In addition, the plaintiff must also prove the commission of an overt act in furtherance of the agreement that caused the plaintiff to suffer actual injury; the agreement to commit the tortious act is not actionable on its own. *Id.*

Plaintiff claims that a witness will testify that the Statement of Charges and testimony of Lightfoot is false, and that the Statement of Charges and the Affidavit (presumably from Shawn DeBrew) are "evidence of an agreement among all officers present to maintain silence about the unlawful arrest and battering" of Plaintiff. (Doc. No. 39 at 7.) Defendants argue that Plaintiff has no evidence of any conspiratorial agreement between Defendants or any information suggesting that Defendants had the same conspiratorial objective. (Doc. No. 38.) The Court agrees with the Defendants and notes that Plaintiff merely offers conclusory allegations to state a conspiracy claim. Thus, the Court grants summary judgment for Defendants on Plaintiff's conspiracy claim under Maryland law (Count VII).

### d. *Count XII: Intentional Infliction of Emotional Distress*

To prove a cause of action for intentional infliction of emotional distress (IIED) in Maryland, the plaintiff must demonstrate the following: "(1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the

wrongful conduct and the emotional distress; and (4) the emotional distress is severe," *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 481 (D. Md. 2002), by pleading each element with specificity, *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002). To meet the extreme and outrageous standard, the plaintiff must show that the defendant's behavior was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 560 (D. Md. 2005) (internal citation omitted). To prove severe emotional distress, the plaintiff must demonstrate that he or she suffered "a severely disabling emotional response, so acute that no reasonable man could be expected to endure it," *Gennell*, 378 F. Supp. 2d at 560, by stating "with reasonable certainty the nature, intensity or duration of the alleged emotional injury," *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 114-115 (Md. 2000) (finding that the plaintiff failed to plead severe emotional distress with particularity where the plaintiff merely alleged that she had to seek medical treatment and suffered fear at work).

In this case, Plaintiff alleges that Defendants acted with "actual malice, ill will, improper motive and evil purpose" by attacking and arresting her, which Plaintiff contends is "outrageous conduct" that caused her to "suffer extreme and severe emotional distress, agony and anxiety." (Compl. ¶¶ 77-79.) Plaintiff also stated in her Complaint that as a result of Defendants' actions, she experienced "fear, grievous bodily harm, extreme physical pain and suffering, mental anguish and economic loss." (Compl. ¶ 80.) In Defendant Lightfoot's Interrogatories, Plaintiff claims that she suffers from depression and Post Traumatic Stress Disorder (PTSD), is unable to sleep regularly without medication, and has a dark area around her nose as a result of Smith's alleged attack on her. (Doc. No. 39, Ex. 5.)

The Court finds that Plaintiff's allegations are too conclusory to meet the very high standard of severe emotional distress for the purposes of an IIED claim. Plaintiff's claim of PTSD is too conclusory, and her assertions that she is unable to sleep without medication and has a dark area around her nose are not sufficient to demonstrate a *severely* disabling emotional response to Defendants' conduct. *See Gennell*, 378 F. Supp. 2d at 560. In addition, Plaintiff fails to specify what actions of the Defendants actually caused Plaintiff to suffer emotional distress. Even if the Court assumes that Plaintiff is alleging that Smith's blow to her face was the cause of her emotional distress, it does not appear to meet the Court's standard for extreme and outrageous conduct. *See id.* Therefore, the Court grants summary judgment to Defendants on Plaintiff's IIED claim under Maryland law (Count XII).

## V.     DEFENDANTS SMITH AND RICHARDSON'S MOTION TO DISMISS

Defendants Richardson and Smith moved to dismiss Plaintiff's claim on the grounds that Plaintiff failed to adequately serve them with process, though they did not specify the particular Federal Rule of Civil Procedure under which they were moving.[11] Defendants also assert that Plaintiff waited approximately seven months before filing the affidavits of service with the Court, which, according to Defendants, violated Rule 5(d)'s requirement that "[a]ny paper after the complaint that is required to be served . . . must be filed *within a reasonable time* after service" (emphasis added). (Doc. No. 22); Fed. R. Civ. P. 5(d).

Subsequent to filing the Motion to Dismiss, Defendants moved for summary judgment, claiming that no material facts are in dispute. (Doc. No. 38.) Because Defendants are challenging the merits of Plaintiff's claims, Defendants have indicated their intention to defend

---

[11] The Standard of Review section of Defendants' Memorandum in Support of their Motion cites Rule 12(b)(6), while the substance of Defendants' arguments concerns Rule 12(b)(5), which governs the defense of insufficient service of process. Fed. R. Civ. P. 12(b)(5). The Court will assume that Defendants are moving under Rule 12(b)(5) instead of Rule 12(b)(6), as the arguments pertain to the former.

actively against the suit. *See Johnson v. Warner*, No. 05-219, 2009 WL 586730, at *4 (W.D. Va. Mar. 6, 2009); *Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993) (stating that a motion for summary judgment "speaks to the merits of the case and demonstrates a concerted effort and an undeniable desire to contest the action"). Accordingly, this Court finds that Defendants have waived the defense of insufficient service of process and whatever claim they were pursuing under Rule 5(d). *See Gallant v. Deutsche Bank Nat'l Trust Co.*, No. 10-006, 2010 WL 1540053, at *3 (W.D. Va. Apr. 16, 2010) (determining that the defendants waived formal service of process after they filed a motion to dismiss for failure to state a claim upon which relief can be granted—comparable to a summary judgment motion—while also maintaining that they had not been properly served with process).

## V.    CONCLUSION

For the reasons described above, the Court (1) GRANTS Defendant Lightfoot's Motion to Revise Scheduling Order; (2) DENIES Plaintiff's Motion for Default Judgment; (3) GRANTS IN PART and DENIES IN PART Defendants Smith, Lightfoot, and Richardson's Motion for Summary Judgment; and (4) DENIES Defendants Smith and Richardson's Motion to Dismiss.

The claims still remaining in the case are: excessive force under § 1983 (Count I) as to Smith, false arrest under § 1983 and Maryland law (Counts II & III) as to Smith and Lightfoot, and assault and battery under Maryland law (Counts IV & V) as to Smith. The *Monell* claim against Prince George's County (Count X) also remains but has been bifurcated. The Court has dismissed Richardson from the suit, and grants summary judgment to Smith and Lightfoot as to Plaintiff's claims of conspiracy under § 1983 and Maryland law (Counts VI & VII), unlawful seizure of property under § 1983 (Count VIII), equal protection—class of one under § 1983 (Count IX), and intentional infliction of emotional distress (Count XII). The Court also grants

summary judgment to Lightfoot on Plaintiff's claims of excessive force under § 1983 (Count I)

and assault and battery under Maryland law (Counts IV & V).  A separate Order will follow.


    July 20, 2010                                         /s/
        Date                                        Alexander Williams, Jr.
                                            United States District Judge